IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-2147-GPG-STV

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ROBERT BRIAN WATSON and WDC HOLDINGS LLC d/b/a NORTHSTAR
COMMERCIAL PARTNERS,

    Defendants.

---

**SEC'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ADVICE OF
PROFESSIONALS AND EVIDENCE OF GOOD ACTS AND OTHER IMPERMISSIBLE
CHARACTER EVIDENCE**

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................2

MOTION IN *LIMINE* ............................................................................................3

I.      MOTION IN *LIMINE* NO.1: TO EXCLUDE EVIDENCE AND
        ARGUMENT ABOUT RELIANCE ON ADVICE OF PROFESSIONALS...............3

        A.  Legal Standards....................................................................................3

        B.  The Court Should Exclude Evidence and Argument About the Involvement
            of Professionals.......................................................................................4

            1.  Defendants Waived Any Defense Based on Advice-of-Counsel Because
                They Denied Access to Legal Advice During Discovery .................................5

            2.  Defendants Cannot Satisfy the Elements of the Advice-of-Counsel
                Defense ........................................................................................9

            3.  The Court Should Exclude References to Professionals That Were Not Fully
                Informed of Facts Related to Defendants' Disclosures ...............................12

II.     MOTION IN *LIMINE* NO. 2: TO EXCLUDE EVIDENCE OF GOOD ACTS
        AND OTHER IMPERMISSIBLE CHARACTER EVIDENCE ...............................13

        A.  Evidence of Watson's Purported Good Acts is Irrelevant to Show He
            Acted Similarly Therewith on Other Occasions ....................................16

        B.  Evidence of Watson's Character is Inadmissible to Show He Acted in
            Accordance Therewith ..........................................................................17

        C.  Evidence of Watson's Character and Prior Goods Acts Will be Confusing
            To the Jury ............................................................................................18

CONCLUSION..........................................................................................................19

Pursuant to the Court's Order dated June 6, 2025, ECF 66, the SEC requests pretrial rulings on the following motions *in limine*.

## INTRODUCTION

This case is about Defendants' false and misleading statements and fraudulent scheme to convince potential investors in real estate projects that Robert Brian Watson ("Watson") had aligned his financial interest in each project with anyone who chose to invest. The SEC's claims concern 11 separate securities offerings related to ten projects involving over 200 investors during a roughly two-year period. This motion seeks exclusion of two types of evidence and argument that would confuse and mislead the jury about Defendants' intent to defraud investors.

*First*, Defendants have indicated that they will refer to the involvement of counsel and other professionals purportedly involved in the preparation of written disclosures to investors. But Defendants have not—and cannot—establish the elements of an advice-of-counsel or other professionals defense, and Defendants should not be permitted to confuse the jury with a "back-door" advice-of-counsel or presence of counsel defense.

*Second*, Defendants have indicated that they will rely on prior "good acts" related to "a hundred plus" other real estate deals and character evidence to show that Watson acted in conformity with those other deals when engaging in the acts alleged in the Complaint. This evidence should be excluded under Federal Rules of Evidence 403 and 404 because evidence that Defendants engaged in other, non-fraudulent conduct is not relevant to whether the charged conduct is fraudulent.

"The purpose of a motion *in limine* is to allow the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an evenhanded and expeditious trial." *Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, No. 08-CV-00578-WJM-CBS, 2012 WL 503510, at *4 (D.

Colo. Feb. 15, 2012). The decision to admit or exclude evidence "lies within the sound discretion

of the trial court." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994). The

moving party has the burden of establishing that the "evidence is inadmissible on any relevant

ground." *Jefferts v. United States Dep't of Com.*, No. 22-CV-0257-WJM-NRN, 2025

WL1489127, at *1 (D. Colo. May 23, 2025) (quoting *Pinon Sun Condo. Ass'n, Inc. v. Atain*

*Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (citation omitted)).

## MOTIONS IN *LIMINE*

**I.      MOTION IN *LIMINE* NO. 1: TO EXCLUDE EVIDENCE AND ARGUMENT
ABOUT RELIANCE ON ADVICE OF PROFESSIONALS.**

The SEC will present evidence that Defendants acted with scienter (and that their conduct

was negligent) when they deceived investors about their intent to invest money alongside

investors, including in statements made in written materials provided to investors. Defendants

have indicated that they intend to argue that they relied on professionals, including attorneys, to

prepare the written disclosures provided to investors.

Evidence and argument about the involvement of counsel should be excluded because

Defendants cannot satisfy the elements of the advice of counsel defense. The order excluding

this evidence and argument should extend to the "back door" or "presence of counsel" defense

because of the substantial risk that references to attorneys' or other professionals' review of

documents will confuse and mislead the jury that counsel or other professionals were fully

informed about Defendants' intent about co-investments and "blessed" the disclosures about that

intent.

### A.      Legal Standards

Courts exclude evidence and argument about reliance on counsel under Rule 403 when a

defendant cannot satisfy the elements of that defense. *See, e.g.*, *SEC v. Kokesh*, No. 09-cv-1021

SMV/LAM, 2014 WL 11516545, at *3 (D.N.M. 2014); *see also SEC v. Lek Sec. Corp.*, No.

17cv1789 (DLC), 2019 WL 5703944, at *3 (S.D.N.Y. 2019). "The elements of such a defense

require a showing of 1) a request for advice of counsel on the legality of a proposed action, 2)

full disclosure of the relevant facts to counsel, 3) receipt of advice from counsel that the action to

be taken will be legal, and 4) reliance in good faith on counsel's advice." *C.E. Carlson, Inc. v.

SEC*, 859 F.2d 1429, 1436 (10th Cir. 1988).

Where defendants do not satisfy the elements of the advice of counsel defense, courts

also preclude "back door" advice-of-counsel or "presence-of-counsel" defenses—evidence and

argument about the involvement or presence of counsel in the underlying transactions—to guard

against the risk of juror confusion that counsel implicitly or explicitly blessed the legality of

conduct. *Kokesh*, 2014 WL 11516545, at *3 ("Such evidence is likely to be misinterpreted by a

lay jury as implicit or explicit 'blessings' of the legality and adequacy of all aspects of the

transactions at issue."); *SEC v. Davenport*, No. 8:21-cv-01427-PD, 2024 WL 4452865, at *1

(C.D. Cal. 2024) ("[T]he Court ruled that since Defendants had conceded they were not asserting

an advice-of-counsel defense in this case, they could not assert a 'back door' advice or presence

of counsel defense and thereby obtain the essential benefit of that defense without having to bear

the burden of proving the elements of the defense."); *Lek Sec. Corp.*, 2019 WL 5703944, at *3

(citing *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013)).

### B. The Court Should Exclude Evidence and Argument About the Involvement of Professionals.

Defendants have indicated through testimony and briefing on summary judgment that

they will attempt to offer evidence and argument about the involvement of experts, including

counsel, in the preparation of written disclosures to potential investors. For example, when

arguing about scienter on summary judgment, Defendants cited testimony from Northstar

employees that Northstar's Private Placement Memorandums ("PPMs") were "blessed" by counsel, ECF 57 at 7-8, and Watson's testimony that "I am not passing the buck to my attorneys, **<u>but</u>** I always told them we always want to make sure we are legal and we always want to make sure that we are compliant." *Id.* (citing in part Watson Investigative Testimony at 160:23-161:2 (emphasis added)). And when conferring on the parties Joint Proposed Pretrial Order, the SEC shared a draft of the proposed order that identified this motion in *limine* as a special issue that the Court should consider, and Defendants did not disclaim a plan to refer to the involvement of counsel at trial.

The Court should exclude references to attorneys and experts offered to show Defendants' intent for three reasons: (1) Defendants cannot pursue an advice-of-counsel defense because Northstar refused to waive its attorney-client privilege, (2) Defendants cannot establish the elements of the formal advice-of-counsel defense; and (3) the involvement of counsel or any other professionals who were not fully informed of the Defendants' true intent and allegedly advised that Northstar's disclosures were nevertheless adequate is not relevant and any probative value of their involvement is substantially outweighed by the danger of unfair prejudice and jury confusion.

> **1.    Defendants Waived Any Defense Based on Advice-of-Counsel Because They Denied Access to Legal Advice During Discovery.**

References to counsel's involvement in preparing disclosures should be excluded because Defendants waived the advice-of-counsel defense when Northstar declined to waive its attorney-client privilege and Defendants refused to provide discovery about counsel's involvement. Defendants waive the advice-of-counsel defense if they fail to make a full disclosure during discovery. *See Lek Sec. Corp.*, 2019 WL 5703944, at *3. "Reliance on the advice of counsel cannot be asserted while simultaneously denying access to the very advice that formed the

supposed good faith belief that the conduct was legal." *Id.*; *see also SEC v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007) ("It isn't possible to make out an advice-of-counsel defense without producing the actual advice from an actual lawyer."). That is precisely what happened here.

At the end of Northstar's Rule 30(b)(6) deposition, on August 21, 2023, Defendants' counsel represented that Northstar was not waiving the attorney-client privilege to assert the advice of counsel defense:

> [SEC Counsel:] MR. MILLER: …. So we had a conversation off the record, and my understanding is the defendants in this case are not currently asserting the advice of counsel defense in this case. And for that reason, there's no waiver or intent to waive attorney-client privilege; is that right?

> [Defendants' Counsel:] MR. VORNDRAN: That's correct.

> MR. MILLER: Okay. And based on that understanding, I am not going to ask questions that go into what would be privileged, based on that representation.

> MR. VORNDRAN: Correct.

> MR. MILLER: Okay. And just so we're clear on the record, I would have, you know, asked questions about each deal, about what was told to counsel and what counsel told the client to fit those elements of the claim. So I just want to make sure that we know, we're on the same page about what would have happened.

> MR. VORNDRAN: Understood.

Northstar Deposition Transcript at 186:12-187:8 (excerpts attached as Exhibit 1, "NorthStar Depo.").

Defendants confirmed that attorneys are not relevant to "any issue in this case" even after Northstar employees referred to the involvement of attorneys during depositions held on October 4 and 5. During those depositions, Northstar employees, Kristi Fisher and Jaimie Jones, referred to the involvement of counsel in the preparation of PPMs. In the wake of this testimony, the SEC

sought to obtain discovery from attorneys involved in the preparation of disclosures and, a week after the depositions, the SEC served Northstar with a set of written discovery requests that, among other things, asked Northstar to "[i]dentify … the attorney(s) that approved the Private Placement Memorandum ("PPM") for each of the Real Estate Projects prior to the PPM being sent to investors." Response to Interrogatory No. 12, attached as Exhibit 2**.** Northstar refused to identify any attorney, representing that the "identity of a specific attorney who approved a PPM is not relevant to any issue in this case." *Id.* (emphasis added). Thus, for the second time, Defendants prevented discovery into facts relevant to an advice-of-counsel defense on the ground that those facts are not relevant to the issues in this case.

Consistent with the assertion of the attorney-client privilege during discovery, Defendants' counsel also asserted the attorney-client privilege during Jones' investigative testimony. Jones indicated that, contrary to Defendants claim that they received advice that their disclosures were adequate, Northstar made changes to disclosures because they received legal advice that the disclosures needed to change. Jones Investigative Testimony Transcript at 92:25-93:23 (excerpts attached as Exhibit 3, "Jones Tr."). Defendants' counsel prevented access to those communications by advising Jones "to not represent what communications might have occurred with counsel" when she testified during the SEC's investigation about changes to disclosures in Northstar's Executive Investment Summaries ("EISs") about co-investments that involved the "advice of our counsel." *Id.* at 92:25-93:23.

Notwithstanding Northstar's assertion of the attorney-client privilege and refusal to disclose the identity of counsel that purportedly gave advice, Defendants attempted to rely on that advice in their motion for summary judgment. They even cited testimony from Fisher and Jones that was the basis for the SEC's request for the identity of attorneys they referenced in

depositions, arguing that "Defendants' relied on experts to prepare the information provided to investors" and, for that reason, argued that "far from being 'reckless,' Mr. Watson was diligent and reasonable in relying on Northstar's hired professionals to prepare all investor-facing information." ECF 57 at 17 (citing "UMF ¶ 11"); *see also id.* at 8-7 ("UMF ¶ 11" citing, among other things, deposition testimony of Fisher and Jones).

Defendants prevented the SEC from accessing information that goes to the heart of the advice-of-counsel defense, including the identity of the attorney providing advice, what Defendants told the attorney about their intent to co-invest, what advice Defendants received about the adequacy of their disclosures about co-investments on each deal at issue in this case, and whether Defendants followed that advice in good faith. The choices to prevent access to this information were deliberate and made with notice that the SEC was seeking discovery into advice from counsel that may be used to support a defense.

Although there was nothing improper about Defendants' decision to prevent access to privileged communications with attorneys, Defendants cannot now attempt to rely on the involvement of those attorneys because they "may not assert the privilege to avoid producing evidence related to [their] advice-of-counsel defense insofar as [they] intend[] to assert such a defense. For fairness, such evidence must be disclosed before the close of discovery and in time to allow for such discovery." *Consumer Financial Protection Bureau v. TransUnion,* No. 22 CV 1880, 2024 WL 3552490, at *4 (N.D. Ill. 2024) (quotation omitted). Courts even preclude an employee from pursuing the advice-of-counsel defense when the attorney-client privilege is asserted by the defendant's employer. *United States v. Wells Fargo Bank, N.A.*, 132 F.Supp.3d 558, 563 (S.D.N.Y. 2015) (concluding that employee "is precluded from asserting an advice-of-counsel defense in light of [employer's] refusal to waive its attorney-client privilege.").

For the same reasons, courts also preclude back-door advice- or presence-of-counsel defenses when defendants claim they do not intend to assert the formal advice-of-counsel defense or claim they will not introduce privileged communications. *See, e.g.*, *Lek Sec. Corp.*, 2019 WL 5703944, at *3. For example, the defendants in *SEC v. Frost*, like Defendants here, "repeatedly refused to disclose the content of communications with counsel regarding the fund documents at issue—asserting attorney-client privilege…." No. 8:19-cv-01559-JLS-JDE, 2022 WL 17327322, at *1 (C.D. Cal. 2022). Although the defendants in *Frost* claimed they would not be "relying on the affirmative advice of counsel defense, Defendants contend[ed] they should be allowed to present evidence that demonstrates they engaged in a 'good faith effort to provide adequate disclosures to investors through consultation with counsel' and they also [sought] 'to offer evidence concerning the participation of attorneys in reviewing and preparing the documents at issue." *Id.* Relying on *Tourre* and *Lek Sec. Corp.*, the court in *Frost* granted the SEC's motion in *limine* to "exclude evidence or argument regarding the advice or presence of counsel," concluding that "[h]aving refused to allow discovery as to communications with or reliance on counsel, Defendants are precluded from offering any evidence or argument at trial regarding the advice, involvement, or presence of counsel." *Id.*; *see also Davenport*, 2024 WL 3513011, at *1 ("In *SEC v. Frost*, the Court rejected a similar attempt by defendants to *suggest* an advice-of-counsel without actually *raising* that defense.") (emphasis in original).

Accordingly, regardless of how the defense or argument is characterized, the Court should exclude evidence and argument about the advice or involvement of counsel because Defendants did not make an adequate disclosure of that advice or involvement during discovery.

> **2.      Defendants Cannot Satisfy the Elements of the Advice-of-Counsel Defense.**

Even if Defendants did not waive defenses that refer to involvement of counsel,

Defendants cannot satisfy the elements of the advice-of-counsel defense, which require a showing of "1) a request for advice of counsel on the legality of a proposed action, 2) full disclosure of the relevant facts to counsel, 3) receipt of advice from counsel that the action to be taken will be legal, and 4) reliance in good faith on counsel's advice." *C.E. Carlson*, 859 F.2d at 1436. As outlined above, based on Defendants' failure to waive the attorney-client privilege and produce fulsome evidence of purported communications with attorneys, they cannot meet these elements. Moreover, the scant evidence that is in the record related to consultation with counsel is also insufficient to meet the elements.

To begin, none of Defendants' exhibits could show a request for legal advice, disclosure of relevant facts to counsel, the receipt of advice, or reliance. Defendants' exhibits consist only of disclosures made to investors—EISs and PPMs—and unspecified "Bank records" and a "1006 Summary Graph." ECF 63-1, Exh. 200-212.

Defendants' witnesses lack the foundation to testify about advice of counsel regarding the sufficiency of Defendants' disclosures about co-investments. Their first "will call" witness is Watson, who testified that he did not disclose to counsel the fact that he would not make an investment in a specific deal. Watson Investigative Testimony Transcript at 161:12-162:3 (excerpts attached as Exhibit 4, "Watson Tr."). In response to repeated questions about what advice he sought from counsel and what facts he disclosed about his decision to make co-investments, Watson could only give nonresponsive narratives and point to his staff, who he assumed was providing counsel a list of who invested in prior deals. *Id.* at 160:18-162:3-165:15. Assuming that others gave an investor list to counsel about deals that have closed is not the same as disclosing to counsel that Watson and Northstar do not decide whether to co-invest in any deal until after PPMs are final, sometimes elect not to co-invest, but plan to tell investors that they

invest in every deal. There is no evidence that counsel "blessed" disclosures with full knowledge of Defendants intent about co-investments.

Similarly, although Watson claims that "we had conversations about" the adequacy of disclosures related to co-investments, he cannot testify about receipt of specific advice because he does not "recall specifically" receiving "legal advice on the specific topic of whether [he] had adequately disclosed to investors that there could be no co-investment in a particular deal." *Id.* at 163:24-164:6; *see also id.* at 185:4-17 (Watson does not recall a "legal discussion" about whether the "PPM and/or operating agreement was sufficient disclosure of the fact that you were not making an equity contribution."); 221:1-11 ("I don't recall whether I specifically talked about this with counsel."); *id.* at 242:2-242:7 ("Q: And similarly with respect to the 2017 EIS and your capital contribution do you recall any specific discussions seeking legal advice on your disclosures surrounding capital contributions? A: It would be similar to my previous testimony today."). Accordingly, Watson's testimony cannot establish any of the elements necessary for the advice-of-counsel defense.

Defendants' second "will call" witness is Fisher, ECF 63 at 13, who claimed that counsel "blessed" disclosures. Fisher Deposition Transcript at 72:14-72:23 (excerpts attached as Exhibit 5 "Fisher Depo."). But Fisher has no foundation for that testimony because, she testified, she had no reasonability or role in preparing disclosures that were sent to investors or soliciting investors. Fisher Investigative Testimony Transcript at 29:23-30:17, 33:10-16, 34:12-16 (excerpts attached as Exhibit 6). She therefore has no foundation to testify about communications with counsel that could satisfy the elements of the advice-of-counsel defense.

Defendants' third and final "will call" witness is Scott Gibler. ECF 63 at 13. Gibler could not testify about communications with counsel that involved a full disclosure of facts about co-

investments because, as late as his deposition in January 2024, Gibler assumed that "those investments were always made." Gibler Deposition Transcript at 60:1-60:9 (excerpts attached as Exhibit 7). Similarly, the Northstar employee primarily responsible for preparing disclosures in EISs, Jones, believed that Watson invested in every deal. Jones Deposition Transcript at 66:23-67:14 (excerpts attached as Exhibit 8).

Accordingly, the Court should exclude evidence and argument about advice-of-counsel because Defendants cannot show that they sought legal advice about the co-investment disclosures, made a full disclosure to facts about co-investments, received advice that their disclosures were adequate, or relied on that advice in good faith.

### 3. The Court Should Exclude References to Professionals That Were Not Fully Informed of Facts Related to Defendants' Disclosures.

In addition to an order excluding the formal advice-of-counsel defense, the Court should also exclude evidence and argument that refers to the involvement of counsel, such as testimony Defendants' have previously cited testimony that counsel "blessed" documents. As noted above, such evidence and argument should be precluded given Defendants' failure to waive attorney client privilege. In addition, in the absence of evidence that could satisfy the elements of the advice-of-counsel defense, references to the involvement of counsel is the exact type of evidence courts exclude as a "back door" or presence-of-counsel defense under Rule 403.

Without evidence that counsel or other professionals knew Defendants' intent about co-investments and specifically advised that their disclosures were adequate and that Defendants relied on that specific advice—as opposed to a general "blessing"—evidence that counsel or other professionals were involved in the preparation of documents "is likely to be misinterpreted by a lay jury as implicit or explicit 'blessings' of the legality and adequacy of all aspects of the transactions at issue." *Kokesh*, 2014 WL 11516545, at *3; *see also Lek Sec. Corp.*, 2019 WL

5703944, at *3; *Tourre*, 950 F. Supp. 2d at 684; *Davenport*, 2024 WL 4452865, at *1. Although Defendants "would like to present such evidence to show that [they were] not aware of any wrongdoing, the evidence's probative value is outweighed by the danger that the jury will be misled and confused." *Kokesh*, 2014 WL 11516545, at *3.

Like the court in *Kokesh*, the Court should exclude references to counsel and professionals that risk misleading the jury by suggesting that counsel or professionals were fully informed of the facts relevant to the co-investment disclosures and approved their sufficiency. That court ruled at the pretrial stage:

> Defendant will not be permitted to introduce argument or evidence regarding attorneys or accountants, as such, without permission from the Court. Defendant shall not mention at any time in the presence of the jury—including but not limited to voir dire, opening statement, and direct or cross examination—the involvement of attorneys or accountants, as such, without the Court's permission.

*Id.*.[1] For the reasons above, the Court should issue a similar ruling before trial.

## II.    MOTION IN *LIMINE* NO 2: TO EXCLUDE EVIDENCE OF GOOD ACTS AND OTHER IMPERMISSIBLE CHARACTER EVIDENCE.

Defendants have shown that they intend to argue that Defendants did not intend to defraud investors when they told them that Watson would co-invest because he will offer evidence that he has a "track record" of a "hundred plus" deals where he did make a co-investment, and that the 11 offerings alleged in the Complaint are "cherry picked" from Watson's purportedly long and successful career in real estate. This evidence should be excluded because the "hundred plus" deals not alleged in the Complaint are not relevant to the claims

---

[1] The Court in *Kokesh* stated that the defendant in that case may call as witness any attorneys or accountants as identified in the "Pretrial Order," but a similar ruling is not appropriate in this case because Defendants did not identify any attorneys or accountants in the Final Pretrial Order. Indeed, Defendants declared during discovery that the identity of counsel involved in the preparation of disclosures is not relevant to any issue in this case.

alleged in this case. The mini-trials on all these separate deals are not only a waste of time under

Rule 403, but evidence of Watson's supposed character trait and evidence of "other acts" used to

prove that on particular occasions Defendants acted in accordance with a certain character is

inadmissible under Rule 404(a) and (b).

      To provide a sense of Defendants' intent to inject mini-trials over prior acts, nearly all of

Defendants proposed exhibits relate to prior deals. Aside from vague references to unspecified

"Bank Records" and a "1006 Summary Graph," Defendants' ten proposed trial exhibits consist

of nearly 600 pages of EISs and PPMs related to more than 25 offerings that are <u>not</u> alleged in

the Complaint. ECF 63-1 at, pp. 7-8.

      These proposed exhibits are consistent with Defendants' prior testimony where they

argued that evidence of Watson's character shows that he did not act with scienter. Through

Watson, NorthStar testified at its Rule 30(b)(6) deposition that the SEC "cherry picked" the deals

involved in this case. Northstar Depo. at 148:20-22. Watson, on Northstar's behalf, claimed that

the SEC "elected to pick ten deals out of all the deals and all the time that I did," *id.* at 152:5-6;[2]

"elected, for whatever reasons, to pick these ten and try to hang me on these ten deals," *id.* at

152:16-17; "my understanding is that I didn't provide the co-invest or the amount of the co-

invest that you wanted to—or thought that I should, and so you're focused on these ten. But you

forget about the hundred plus that I did," *id.* at 152:25, 153:1-4; "in fact, on many deals, on a

percentage basis, if you add up the 17 million that I just mentioned to you, that comes out to an

average co-invest of over 12 percent across the board of all deals," *id.* at 153:5-9; "[b]ut you

have elected, which is your prerogative as the government, to pick these ten and to focus on

them," *id*. at 153:10-12. In his individual deposition, Watson testified that his "track record"

_____

[2] The Complaint alleges fraud in connection with 11 offerings related to ten real estate projects.

proved that he "always believed and intended that I was to invest." Watson Deposition

Transcript at 18:13-15 (attached hereto as Exhibit 9, "Watson Depo."). Watson minimized the

alleged fraud stating that there were "a few that I missed and those are the few that you elected to

focus on." *Id.* at 18:15-17.

Defendants offered similar argument and evidence on summary judgment. The first

"fact" identified in their "Statement of Undisputed Material Facts" invoked Northstar's "24-year

history" and how much Watson co-invested in other projects over that period and echoed

Northstar's testimony by claiming that Watson and Northstar employees "co-invested

approximately 12.42% of the total amount of investor capital.". ECF 57 at p. 3; *see also*

Northstar Depo. at 153:5-9.[3]

Finally, in the Proposed Final Pretrial Order, ECF 58 at p. 17, the SEC informed the

Court of its intent to object to evidence that Watson invested in uncharged deals under Rule

404(b)(1) and the corollary to the rule that prior bad acts are inadmissible, which provides that

"evidence that a defendant engaged in other, non-fraudulent conduct is simply irrelevant to

whether the charged conduct was fraudulent." *United States v. Velissaris*, No. 22-cv-105-DLC,

2022 WL 17076747, at *4 (S.D.N.Y. Nov. 18, 2022). Defendants have not withdrawn their

exhibits of uncharged prior acts or conceded that they will not offer evidence and argument of

Defendants' character and prior acts.

For three reasons, evidence of Watson's character and prior acts should be excluded.

---

[3] In response, the SEC asserted that Watson's purported "good acts" will not be admissible under
Fed. R. Evid. 404(b), *United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) ("[A]
defendant may not seek to establish his innocence ... through proof of the absence of criminal
acts on specific occasions." (quotation omitted)). ECF No. 58 at 2.

**A.    Evidence of Watson's Purported Good Acts is Irrelevant to Show He Acted Similarly Therewith on Other Occasions.**

Under Rule 404(b)(1), prior bad acts are not admissible to prove a person's character to show that on a particular occasion the person acted in accordance with the character. "As a corollary to this rule, a defendant may not seek to establish his innocence through proof of the absence of criminal acts on specific occasions. Thus, evidence that a defendant engaged in other, non-fraudulent conduct is simply irrelevant to whether the charged conduct was fraudulent." *Velissaris*, 2022 WL 17076747, at *4; *see also United States v. Daneshvar*, 925 F.3d 766, 779 (6th Cir. 2019) ("[F]or the same reason that prior bad acts may not be used to show a predisposition to commit crimes, prior good acts generally may not be used to show a predisposition not to commit crimes."); *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2021) ("Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment.")

Under Rule 404(b), Defendants cannot attempt to prove Watson's character with respect to making co-investments by proof of specific co-investments he did make in other, non-charged deals. For example, in *United States v. O'Connor*, a government meat inspector was charged with accepting bribes from certain meat packing companies. 580 F.2d 38 (2d Cir. 1978). At trial, the defendant sought to introduce "FBI reports of interviews with still other meat packers who stated that they had not paid [the defendant] any bribes." *Id.* at 43. Although the district court "curtail[ed] examination" of certain witnesses whom the defendant called to establish this defense, it allowed some testimony along these lines "in general terms." *Id.* After the defendant's conviction was reversed on appeal because of an unrelated evidentiary error, the Second Circuit went out of its way to admonish the district court for failing to "exclude[]" such evidence "in the first instance" and directed that any evidence about the defendant's "non-receipt of bribes" on

16

other occasions not charged in the indictment be excluded in the retrial as "such testimony would in effect be an attempt to demonstrate [the defendant's] good character by proof of specific good acts." *Id*.; *see also United States v. Doyle*, 130 F.3d 523, 541-42 (2d Cir. 1997) (proof of the defendant's "specific good deeds" contrary to the alleged criminal conduct not admissible to prove good character or to disprove knowledge or intent); *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (defense-proffered character evidence of the defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts").

The Complaint does not allege that Defendants' only conduct during the more than two-year period at issue was fraudulent and does not allege that Defendants' entire business was fraudulent. Thus, whether Watson co-invested in prior uncharged deals "is simply irrelevant to whether the charged conduct was fraudulent," and not admissible to prove Watson's intent on the specific occasions alleged in the Complaint. *Velissaris*, 2022 WL 17076747, at *4. This is precisely the type of evidence precluded by Rule 404(b)(1); *see, e.g.*, *United States v. Glover,* 2025 WL 1580848, at *8 (S.D.N.Y. 2025) ("Evidence of a defendant's participation in other, non-fraudulent activity is generally irrelevant, except where a defendant is alleged to have always or continually committed bad acts or where the evidence of good acts would undermine the underlying theory of a criminal prosecution." (quotation omitted)).

**B.    Evidence of Watson's Character is Inadmissible to Show He Acted in Accordance Therewith.**

Rule 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See, e.g.*, *SEC v. Collector's Coffee Inc.*, No. 19-CV-4355 (VM), 2023 WL 8280531, at *5 (S.D.N.Y. Nov. 30, 2023) ("Kontilai's character for business acumen has no

bearing on whether he made misstatements or omitted facts to investors on certain occasions, and

positive character evidence about Kontilai's skill as a business leader will accomplish little but

provide an undue opportunity for the jury to make the type of propensity inference prohibited by

FRE 404."). Evidence of Watson's "track record" of co-investing in other deals not alleged in the

Complaint, Watson Depo. at 18:13-15, is not admissible to show his intent to co-invest in deals

alleged in the Complaint under Rule 404(a)(1). Similarly, purported evidence of Watson's

character for co-investing in the "hundred plus" other deals he cites is not relevant to show his

intent with respect to the deals alleged in the Complaint. Northstar Depo. at 152:25, 153:1-4

     **C.**    **Evidence of Watson's Character and Prior Good Acts Will be Confusing to
the Jury.**

Evidence of prior acts and Watson's character evidence or similar evidence of prior good

(or lack of prior bad) acts should also be excluded pursuant to Rule 403. Such evidence is not

only inadmissible as explained above, but any minimal probative value of such evidence is

outweighed by the likelihood of jury confusion, the risk of jury nullification, and undue delay.

*See* Fed. R. Evid. 403; *see also United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011)

("And the trial judge was rightly concerned that, to the extent any of the evidence [of prior good

acts] could be construed to relate to the charged conspiracies, the jury would find it extremely

confusing, if not incomprehensible."); *Doyle*, 130 F.3d at 542 ("The trial court was well within

its proper authority to decide either that Doyle's past cooperation with army intelligence had no

bearing on the crimes charged, or that any probative value was substantially outweighed by the

risk of confusing the jury with extraneous matters, or of wasting the court's and jury's time.");

*United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) ("It is a proper exercise of a district court's

discretion to exclude evidence that is prejudicial, confusing, or misleading . . . and to exclude

evidence of specific acts intended to demonstrate character traits not at issue."); *SEC v. Morelli*,

No. 91 CIV. 3874 (LAP), 1993 WL 603275, at *2 (S.D.N.Y. Dec. 21, 1993) ("[I]ntroduction of
evidence of defendants' character for truthfulness and honesty is unnecessary and would cause
undue delay in this bench trial."). Indeed, "[t]he circumstantial use of character evidence is
generally discouraged because it carries serious risk of prejudice, confusion and delay." Fed. R.
Evid. 404 Committee Notes on Rules – 2006 Amendment.

## CONCLUSION

For the reasons above, the Court should grant the *motions in limine*.

Respectfully submitted this 18th day of July, 2025.

By:    */s/ Terry R. Miller*
Terry R. Miller
Jodanna L. Haskins
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
Denver Regional Office
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000
millerte@sec.gov
haskinsjo@sec.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2025, I electronically filed the foregoing and served the same on counsel of record using the CM/ECF system.

*/s/ Terry R. Miller*