IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-2147-GPG-STV

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

 Plaintiff,

v.

**ROBERT BRIAN WATSON and WDC HOLDINGS LLC d/b/a NORTHSTAR COMMERCIAL PARTNERS,**

 Defendants.

---

**RESPONSE IN OPPOSITION TO PLAINTIFF THE SECURITIES AND EXCHANGE COMMISSION'S MOTIONS IN LIMINE**

---

 Defendants WDC Holdings, LLC d/b/a Northstar Commercial Partners ("Northstar") and Robert Brian Watson ("Mr. Watson"), through undersigned counsel, respectfully submit the following responses in opposition to Plaintiff the Securities and Exchange Commission's ("SEC's") Motions in *Limine* Nos. 1 and 2 (Dkt. No. 67).

**I. DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S "MOTION IN *LIMINE* NO. 1: TO EXCLUDE EVIDENCE AND ARGUMENT ABOUT RELIANCE ON ADVICE OF PROFESSIONALS."**

 The SEC seeks to bar the jury from hearing any evidence that attorneys or other professionals were involved in preparing investor-facing materials, including the Private Placement Memoranda ("PPMs") and Executive Investment Summaries ("EISs"), that are central to its claims. That request is overbroad and unsupported. Defendants are not asserting an advice-of-counsel defense and will not argue that any attorney "blessed" their conduct. Rather, Defendants intend to introduce limited, non-privileged evidence showing that the preparation of these documents involved professionals as part of the ordinary course of business. That evidence

1

is relevant to Defendants' good faith, directly negates scienter, and rebuts the SEC's contention that Defendants acted unreasonably or negligently.

In a closely analogous case, the court in *SEC v. Ferrone* rejected an SEC motion in *limine* seeking to exclude similar evidence. 163 F. Supp. 3d 549, 570 (N.D. Ill. 2016). The defendant there, like Defendants here, did not assert an advice-of-counsel defense but sought to present evidence of attorney involvement as part of a good faith defense. The court denied the SEC's motion, explaining that the jury—not the court—should weigh such evidence in deciding scienter and good faith, and cautioning against "gutting [defendant's] defense out of the box." *Id.*

The SEC's premise that it lacked a fair opportunity to explore this evidence in discovery misses the mark entirely. The evidence at issue is not some "back door" attempt to sneak in an advice-of-counsel defense—it is the truth coming in through the front door. It is evidence that provides necessary context for the offerings in which the SEC must prove scienter. Defendants will not introduce or reference any legal advice, nor will they argue that they acted in reliance on counsel. What Defendants will show is that attorneys and other professionals were integral to the process of drafting the PPMs and EISs. That involvement was part of the operational reality of Northstar's business, the very same operations the SEC now seeks to characterize as a "fraudulent scheme." This real-world context is directly relevant to the state-of-mind issues the SEC must prove. The SEC bears the burden of proving scienter, and Defendants are entitled to present relevant, non-privileged evidence that negates that element.

The mere fact that attorneys and other professionals were part of the ordinary process of preparing offering materials does not waive the attorney-client privilege. Such evidence is admissible to show Defendants' state of mind, the context in which decisions were made, and the reasonableness of their conduct. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2015

WL 5123652, at *7 (N.D. Ill. Sept. 1, 2015) ("[T]he attorney-client privilege is not waived merely because counsel's advice may have influenced a litigant's state of mind and is therefore relevant to that state of mind."). The SEC may not shift its burden by requiring Defendants to prove the elements of a formal advice-of-counsel defense before introducing evidence that negates scienter or rebuts negligence.

Nor do the SEC's cited authorities justify a blanket exclusion of such evidence. All rely on the rationale in *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013), where the Court **did not** exclude all evidence of attorney involvement. Instead, the Court weighed case specific facts in conducting a Fed. R. Evid. 403 balance, considered that the lawyer involvement often related specifically to the disclosures in question, and precluded "evidence relevant *solely* to show that the lawyers attended meetings" and "*emphasis*" on the "presence of counsel." *Id.* at 684 (emphasis added). Even so, the *Tourre* court allowed evidence on the "context" of the transaction, and evidence that showed that "numerous individuals and/or committees" participated. *Id.* The *Tourre* court also allowed the use of the words " 'counsel,' 'lawyer,' or 'attorney,' " and identification of the "profession of the individuals reflected" on exhibits. *Id.* at 685; *Ferrone*, 163 F. Supp. 3d at 570 (noting that in *Tourre*, the trial judge "did not preclude the defendant from mentioning that lawyers were involved in the process of putting together transaction and disclosure documents.").

*Lek Sec. Corp.* likewise does not support a blanket exclusion. In that case, unlike here, the defendants sought "to introduce evidence of a reliance on the advice of counsel." *Sec. & Exch. Comm'n v. Lek Sec. Corp.*, 2019 WL 5703944, at *1 (S.D.N.Y. Nov. 5, 2019). That evidence included "reliance on a letter from counsel" for other defendants (not the ones seeking to introduce the evidence) and reliance on "assurances" from other defendants as to purported

3

advice those other defendants had received from their counsel. *Id.* The court found defendants "may not refer in any way to the [other defendants'] consultations with counsel or offer evidence suggesting that there were such consultations, even in an effort to demonstrate their good faith." *Id.* at *3. Those are not the circumstances presented here. Defendants are not seeking to introduce evidence of advice of counsel or reliance on any such advice. The evidence tending to show the context of the transactions at issue necessarily includes reference to the individuals and the professions involved, without reference to any lawyer's advice.

The SEC is asking this Court to exclude evidence that goes to the heart of its scienter theory and is critical to Defendants' good faith defense. Such a sweeping order would deprive the jury of relevant context and Defendants of presenting their defense. At most, if such evidence is introduced at trial and the Court concludes it might give rise to improper inferences, that concern could be fully addressed through an appropriate limiting instruction—an approach that would fairly balance the SEC's concerns with Defendants' right to present their defense. The better course, as in *Ferrone*, is to allow the jury to hear the evidence and decide for itself what weight it deserves.

II. **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S "MOTION IN *LIMINE* NO 2: TO EXCLUDE EVIDENCE OF GOOD ACTS AND OTHER IMPERMISSIBLE CHARACTER EVIDENCE."**

In its second motion in *limine*, the SEC seeks a sweeping order that would bar the jury from hearing nearly all of Defendants' evidence regarding Mr. Watson's consistent history of co-investing in projects, claiming that such evidence "is not relevant to the claims charged in this case." (Dkt. No. 67 at 13). The SEC is wrong. "The bar for admission under Rule 401 is very low." *United States v. Wells*, 38 F.4th 1246, 1260 (10th Cir. 2022) (quoting *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007)).

This is not "impermissible character evidence" or mere proof of "prior 'good acts.'" By the SEC's own framing, this case is about "false and misleading statements and [a] fraudulent scheme" to convince potential investors that Mr. Watson "has aligned his financial interests in each project with anyone who chose to invest." (Dkt. No. 67 at 3). The SEC's theory rests on the notion that Defendants violated the securities laws "when they told investors that Watson invests in every deal and that he planned to invest in the [at the time, *future*] offerings alleged in the Complaint." (Dkt. No. 58 at 4). Thus, evidence of Defendants' long-standing, consistent co-investment track record is directly relevant for multiple reasons. First, it bears on whether any challenged statement about co-investment was, in fact, true. Second, even if some statement could be found inaccurate, this evidence squarely undercuts the SEC's scienter theory by showing that Mr. Watson's statements were grounded in an established pattern of co-investment and his honest belief in that pattern.

Mr. Watson honestly believed, for example, that he had co-invested "over 12 percent across the board of all deals," (Dkt. No. 67 at 15 (citing Northstar Depo. at 153:5-9)). That belief makes it less probable that Defendants had the requisite scienter when they stated, in *early* marketing materials, that Northstar would co-invest 5 percent. That belief did not arise in a vacuum—it was informed by years of consistent practice and successful execution of the very "aligned[] financial interest" the SEC claims was a sham. (Dkt. No. 67 at 3).

Moreover, this evidence would be admissible even if it *were* character evidence. Although the literal language of Rule 404(a) applies only to criminal cases, the Tenth Circuit has held that "when the central issue involved in a civil case is in nature criminal, the defendant may invoke the exceptions to Rule 404(a)." *Perrin v. Anderson*, 784 F.2d 1040, 1044 (10th Cir. 1986); *see also, e.g., S.E.C. v. Peters*, 978 F.2d 1162, 1168 (10th Cir. 1992)(in SEC civil

5

enforcement action, defendant testified "as to his own good character" and seven witnesses testified that his "character was impeccable"); *Sparrow v. United States*, 402 F.2d 826, 828–29 (10th Cir. 1968) (where criminal securities fraud was alleged, holding that "the good faith of the defendant in the plan or scheme and good faith intention to carry out the promises and representations constitutes a defense which the defendant may assert in a prosecution [under] the fraud portions of the Securities Act").

In *Perrin*, police officer defendants sought to introduce evidence of the plaintiff's violent actions against officers under Rule 404(a) to show that the plaintiff was the aggressor. 784 F.2d at 1043-44. The Tenth Circuit upheld admission of the character evidence, reasoning that the defendants' self-defense claim was not functionally different from a criminal self-defense claim. *Id.* at 1044-45. The same principle applies here. "A verdict against the defendants in this case would be tantamount to finding" that they defrauded investors of millions of dollars. *Id.* "The resulting stigma warrants giving [Defendants] the same opportunity to present a defense that a criminal defendant could present." *Id.*; *see also, e.g., Joseph E. Seagram & Sons, Inc. v. Shaffer*, 310 F.2d 668, 676 (10th Cir. 1962)("The pinning of the badge of fraud upon a person is a matter of serious concern and we fully appreciate appellant's desire to have this stigma removed.").

Finally, the SEC's argument that such evidence "will be confusing to the jury" is empty rhetoric. What would mislead the jury is the one-sided, incomplete narrative the SEC seeks to present. For years, even before this case was filed, the SEC has had the digital equivalent of Mr. Watson's entire professional history: every offering, every financial record, every communication. The narrow, limited portion of that record necessary for Defendants' defense contains nothing the SEC is unprepared to address. Having chosen to bring this case, and having

6

had complete access to the record, the SEC should not be permitted to strip away the very context that directly refutes its theory of liability.

## CONCLUSION

For the reasons set forth herein, the SEC's (a) "Motion in *Limine* No 1: To Exclude Evidence And Argument About Reliance On Advice Of Professionals," and "Motion in *Limine* No 1: To Exclude Evidence Of Good Acts And Other Impermissible Character Evidence" should be denied.

Respectfully submitted this 15th day of August, 2025.

By: /s/ *Javier J. Heres*
Paul L. Vorndran
Javier J. Heres
Attorneys for Defendants
R. Brian Watson and WDC Holdings LLC d/b/a Northstar Commercial Partners
Jones & Keller
1675 Broadway, 26th Floor
Denver, CO 80202
(303) 573-1600

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 15, 2025, I electronically filed the foregoing and served the same on counsel of record using the CM/ECF system.

<u>/s/ Emily Morse-Lee</u>